**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TINA DAVIS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | Civil Action No. <u>4-17-cv280</u> |
| **vs.** | § | |
| | § | |
| **TEXAS CHILDREN HOSPITAL,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | <u>**JURY TRIAL DEMANDED**</u> |

<u>**COMPLAINT**</u>

Plaintiff, Tina Davis, files this Complaint against the Defendant, Texas Children Hospital, and her Complaint states the following:

<u>**PARTIES**</u>

1.      The Plaintiff in this action is Tina Davis (MS. Davis) who lives at 13501 Hooper Rd, House TRLR 208, Houston, Texas 77047.  Ms. Davis was employed with Texas Children's Hospital from approximately August 24, 2015 through August 22, 2016.

2.      Defendant Texas Children's Hospital is a corporation organized under the laws of the State of Texas and can be served by serving its registered agent, Mark A. Wallace at 6621 Fannin St., Houston, Texas 77030.

3.      Defendant is Ms. Davis' former "employer" as defined within the meaning of 38 U.S.C. § 4303(4)

**JURISDICTION AND VENUE**

4.　　Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §§ 1981 and 1981(a), Title VII of the Civil Rights Act of 1964 and seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5.　　At all relevant times, Ms. Davis was and is an African American citizen of the United States and a resident of the Southern District of Texas. Ms. Davis was employed by Texas Children's Hospital which is located in the Southern District of Texas. Ms. Davis was subjected to unlawful employment practices in the Southern District of Texas.

6.　　Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5 (f)(3), as the events giving rise to this Complaint occurred in the Southern District of Texas and Texas Children's Hospital is located in, Southern District of Texas.

7.　　Costs and attorney's fees may be awarded pursuant to 42 U.S.C. §2000E-5(K) and

**CONDITION PRECEDENT**

8.　　This Complaint is timely, filed within the applicable statute of limitations period for claims under Title VII, 42 U.S.C. § 2000e *et. seq.* as amended by the Civil Rights Act of 1991 and 42 U.S.C. §§ 1981 and 198l a. All conditions precedent have occurred, or their performance has been waived by the Defendant.

**TITLE VII EXHAUSTION**

9.　　Within 300 days of the acts of which plaintiff complains, Ms. Davis filed a charge of discrimination with the EEOC, Charge No. 846-2016-37711, alleging that she had been terminated in retaliation for having filed a harassment claim with Texas Children's Hospital's Human Resource Department on or about December 2015. The EEOC issued it Notice of Right To Sue and this action is commenced within 90 days of Plaintiff's receipt of that notice. All

administrative remedies have been exhausted and all conditions precedent to the filing of this action have occurred.

**FACTUAL ALLEGATIONS**

10.    Ms. Davis worked without incident for Texas Children since August 24, 2015.

11.    Ms. Davis was originally hired by defendant in August 2015 as a Pathology Patient Care Technician, a position in which she was employed until she was fired on or about August 22, 2016.

12.    As set forth in greater detail below, throughout her employment at Texas Children's Hospital, Ms. Davis has been subjected to a shocking barrage of discrimination and harassment on the basis of her race/color and sex. Despite Ms. Davis's many written complaints and pleas for Texas Children's Hospital to bring an end to the discriminatory and harassing conduct committed against her by her supervisor and co-workers, Texas Children' Hospital has turned a blind eye to her increasingly desperate plight. Ms. Davis even went all the way up the chain of command to Mark Wallace CEO of the Hospital and Ann O'Connell Laboratory Manager, they both directed her back to her immediate supervisor or director the very people who were either harassing her and/or not helping her.

13.    During her employment Ms. Davis was singled out by her immediate supervisor Conchita Almedina- de Palacious (CAP) who subjected Ms. Davis to continuous harassment and write ups for minor issues at work that were over looked when done by none African American employees, also while in a meeting discussing training CAP asked the trainer Marilee Reyes if she was finished with the discussion she indicated she was and when Ms. Davis got up to leave she was physically assaulted by CAP, who grabbed Ms. Davis by the back of her shirt and forced her back into her seat. Ms. Davis went to the laboratory director Kesha Rector who instructed her to report the incident to the HR director Ruben Castillo. Texas Children's Hospital's failure to investigate and take prompt remedial action in response to this and other complaints by Ms. Davis was in

violation of its own written employment policies.  After this complaint against CAP, Ms. Davis started receiving written reprimands or Employee Conference Record (ECR) and verbal warnings for minor issues such as gossiping at work.

14.     Roma Patel, Ms. Davis', coworker walked by and saw Ms. Davis talking with another employee Tony Morin and Roma Patel told CAP, Ms. Davis and Tony Morin were talking about her. Once confronted Roma Patel admitted she didn't know what they were talking about. CAP wrote Ms. Davis up for this incident and forced her to apologize to Roma Patel.

15.     Yolanda White told CAP that Ms. Davis who was on break at the time had coffee in the call center. On the following Monday CAP confronted Ms. Davis about eating in the call center which was considered a clean area and food was regular consumed in the location by other coworkers. There were no signs posted stating no food are drink in the area, also during this meeting CAP asked Ms. Davis about a photo that was left on the printer. Ms. Davis received an ECR and was told by CAP if she complains about this she would be in more trouble. Signs were posted in the area after Ms. Davis' was wrote up.

16.     Shortly thereafter, Ms. Davis noticed that her employee identification number was being assigned to incorrect blood samples that she didn't perform and work she did perform her labels were missing from the containers. Med-Tech Alex Villarreal went into the system he noticed that it was some of Ms. Davis' coworkers who was doing this, they were identified as Omar Crespo and Denise Franklin. Again Ms. Davis notified her immediate supervisor CAP, Ruben Castillo HR director, and Kesha Rector laboratory director about this incident. Nothing was done by them but Ms. Davis received an ECR for incorrectly labeling blood samples and/or not labeling blood samples.

17.     Ms. Davis made numerous complaints to her supervisors, following Texas Children's Hospital Employee Problem Solving Process Policy including human resource director Ruben Castillo and laboratory director Keisha Rector. No effective action was taken to prevent racially

harassing Ms. Davis and as a result of Plaintiffs opposition to her tormenters, Ms. Davis became the target of some of her coworkers. Ms. Davis was subjected to berating or belittling comments in front of other coworkers by her supervisor CAP and coworker Omar Crespo. Ms. Davis', supervisor CAP would make statements in front of other coworkers when the Ms. Davis was present that "some people are difficult to work with or are making it difficult to work with them."

18.    Omar Crespo would get into Ms. Davis' face and yell "I do what I want." An employee named Connie told Ms. Davis next time he does that push the panic button to notify the police. When Ms. Davis informed her supervisor CAP, Ruben Castillo HR director and Kesha Rector Lab director they would remind her not to retaliate are she would be disciplined, but at the same time there was no action taking to correct the actions of Omar Crespo.

19.    Plaintiff's coworkers were aware of her treatment, because statements were made to her by some coworkers, "that if she wanted her tormentor Omar Crespo to stop harassing her, she needed to just hug him (like former employee Jasmine Fitch)." Other coworkers encouraged Ms. Davis to report her harassment to the Human Resource department which she had already done and because of this the harassment only got worse.

20.    The disparate treatment continued for Ms. Davis, she was constantly harassed and treated differently than her Hispanic and Indian coworkers. If a coworker told CAP that Ms. Davis was on the phone, eating, using company property for personal reason, Ms. Davis was giving a ECR. When Ms. Davis would bring up the fact that even CAP uses her phone in the same area, other coworkers did these same things, or told her it was ok, she would not respond.

21.    Ruben Castillo notified Ms. Davis that he was aware of her concerns and he even notified Kesha Rector just to keep her informed. Mediation was scheduled by Ruben Castillo for Ms. Davis and Omar Crespo but for unknown reasons Ruben Castillo canceled the mediation. Because of the constant harassment by her supervisor and coworkers and lack of help from Human Resource Director and Laboratory Director, Ms. Davis sought the help of Employee Assistance Program

(EAP). Ms. Davis meet with Allison Bell whom she notified about the harassment and Allison Bell wanted Ms. Davis to schedule an appointment Employee Health Clinic because she thought Ms. Davis maybe suffering from depression because of the constant nonstop harassment.

22.    Ruben Castillo, eventually schedule the mediation after being questioned by Allison Bell about why the mediation was not done.  During the mediation, it was recommend that Ms. Davis and Omar Crespo both attend Navigating Beyond Conflict mediation course, which Ms. Davis successfully completed. Also, during the mediation in response to a question from Ruben Castillo, Omar Crespo stated "That's why you all are getting raped, killed, and robbed" and Ruben told Omar Crespo to "refrain from using that type of language." In response to this threatening comment and fearful for her safety Ms. Davis stated "maybe I should have my brother pick me instead of riding the shuttle bus."

23.    After this mediation Ms. Davis was reassigned to the main campus location to separate her and Omar Crespo. Omar Crespo would come over to Ms. Davis' new location and loudly make the statement "I do what I want." Ms. Davis notified Ruben Castillo that Omar Crespo was showing up in the new area.  Nothing was done to stop Omar Crespo from showing up at Ms. Davis' new work location. At the main campus, there was an open position that Ms. Davis was qualified for and she put in a request to be transferred to the position permanently and she was denied by Ruben Castillo and less than two weeks later Ms. Davis employment was terminated because she was accused of making a threatening comment against Omar Crespo during the mediation.

**COUNT ONE**

**Discrimination and Harassment in Violation of Section 1981**

24.    Defendant has discriminated against Plaintiff on the basis of her race/color (African American) in violation of Section 1981 by denying her the same terms and conditions of

employment available to employees who are not African American, including but not limited to, subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free of unlawful harassment.

25.     The conduct of was open and obvious and was witnessed by a number of plaintiff's coworkers. Defendant either knew or should have known that was Ms. Davis' supervisor and co-worker were harassing her because she was African American, but did nothing to restrain them.

26.     As a result of defendants' unlawful conduct Ms. Davis has suffered loss of employment, loss of income, loss of reputation, loss of enjoyment of life, and severe emotional distress, for which she seeks back pay, front pay and/or reinstatement and compensatory damages.

27.     Defendant's actions complained of herein were taken with malice or with a conscious disregard for plaintiffs federally protected rights, making an award of exemplary damages appropriate.

28.     Defendant's unlawful and discriminatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**COUNT TWO**

**Retaliation in violation of Section 1981**

29.     Defendant has retaliated against Ms. Davis in violation of §§ 1981 and 1981a, for opposing and/or complaining of Defendant's discriminatory practices against herself by, subjecting Ms. Davis to acts of discrimination, harassment, humiliation, and encouraging and/or coercing Ms. Davis' co-workers to falsely contradict her truthful allegations of discrimination, harassment and/or retaliation.

30.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of §§ 1981 and 1981a, Ms. Davis has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

31. As a result of the Defendant's unlawful and retaliatory conduct in violation of §§ 1981 and 1981a was outrageous and malicious, was intended to injure Ms. Davis, and was done with conscious disregard of Ms. Davis' civil rights, entitling Ms. Davis to an award of punitive damages.

## COUNT THREE

**Discrimination and Harassment in Violation of Title VII**

32. Defendant has discriminated against Plaintiff on the basis of his race/color (African American) in violation of Title VII by denying her the same terms and conditions of employment available to employees who are not African American, including but not limited to, subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free of unlawful harassment.

33. Defendant has discriminated against Ms. Davis on the basis of her race/color in violation of Title VII by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Ms. Davis because of her race/color.

34. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Ms. Davis has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief. Defendant's unlawful and discriminatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Ms. Davis, and was done with conscious disregard of Ms. Davis' civil rights, entitling her to an award of punitive damages.

## COUNT FOUR

**Retaliation in Violation of Title VII**

35. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII, Ms. Davis has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

36. Defendant's unlawful and retaliatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Ms. Davis, and was done with conscious disregard of her civil rights, entitling Ms. Davis to an award of punitive damages.

37. Defendant has violated its duty as Ms. Davis' employer to provide a safe workplace, to take reasonable steps to determine the fitness of her co-workers and supervisors and to reasonably supervise her co-workers and supervisors by, failing and refusing to investigate and/or take appropriate disciplinary or other action in response to Ms. Davis' repeated verbal and written complaints of discriminatory and harassing conduct by her co-workers and/or supervisors on the basis of her race/color and sex, including but not limited to, threats and acts of violence against Ms. Davis by other Texas Children's Hospital employees and supervisors.

38. Defendant had actual knowledge of the undue risk of harm to which it was thereby exposing Ms. Davis, based on her repeated written and verbal complaints to her supervisors and Human Resources officials at Texas Children's Hospital.

39. As a direct and proximate result of Defendant's breach of duty to supervise, Ms. Davis has been injured and has incurred damages.

**REQUEST FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Tina Davis, respectfully prays that the defendant be cited to appear herein and that the Court grant her the following relief:

a. Grant Ms. Davis a permanent injunction, enjoining defendant, its agents, employees, successors, assigns and all persons in active concert or participation with it, from discriminating against her in violation of Title VII and §1981 et. seq.

b. Find defendant's practices complained of herein, *i.e.,* plaintiff's unlawful treatment and firing, to be in violation of Title VII and § 1981 et. seq.

c. Grant Ms. Davis a declaratory judgment, declaring defendant's practices complained of herein to be in violation of Title VII and §1981 et. seq.

d. Grant Ms. Davis reinstatement, promotion, back pay, and/or front pay, loss of benefits, past and present, or any other appropriate relief to compensate her for the wrongs complained of herein;

e. Grant attorney and expert fees appropriately recoverable and costs of all proceedings;

f. Grant Ms. Davis damages for mental anguish and emotional distress, lost earnings and lost earning capacity;

g. Grant Ms. Davis punitive damages to punish defendant and to deter defendant and others from engaging in similar activity;

h. Grant such other and further relief, including pre-judgment and post-judgment interest, at law or in equity, as the trier of fact deems necessary and proper; and

i. That the Court declare that the Defendants' acts were willful and wonton and in reckless disregard of the Plaintiff's civil rights under law;

j.  That this Court enjoin the Defendant from reporting Ms. Davis' termination to any agency, association, authority, or entity; and,

k.  Such other and further relief as to which the Court deems just and proper.

## ATTORNEY'S FEES

40.    Under 38 U.S.C. § 4323(B)(2), Ms. Davis is entitled to reasonable and necessary attorney's fees incurred in defense of this suit.

41.    It was necessary for the Plaintiff, Tina Davis to retain Roderick Rodgers, a licensed attorney in good standing, to protect her rights and petition this Court due to the discriminatory acts of the Defendant. Texas Children Hospital should be ordered to pay reasonable attorney's fees, expenses, costs, and a judgment should be rendered in favor of the attorney and against Texas Children Hospital, and be ordered paid directly to the undersigned attorney, who may enforce the judgment in the attorney's own name.  Ms. Davis requests post judgment interest as allowed by law.

DATED: January 25, 2017

Respectfully Submitted,

*/s/ Roderick Rodgers*
Roderick Rodgers
Bar No. 24089590
6201 Bonhomme Road, Suite 354-N
Houston, Texas 77036
(817) 287-1026
(832) 767-0373 (Fax)
rdrodgers@outlook.com
**ATTORNEY FOR PLANTIFF TINA DAVIS**